OPINION
The appellants, Marsha Parker and Esiquiel Ramirez, Sr. ("appellants"), appeal the judgments of the Defiance County Court of Common Pleas, Juvenile Division, granting permanent custody of their children to the Defiance County Department of Human Services ("DHS"). For the following reasons, we affirm the judgments of the trial court.
The pertinent facts and procedural history in this matter are as follows. On March 11, 1999, DHS filed a complaint alleging that the appellants' four children, Esiquiel, Jr., then age 13, Justino, then age 12, Alejandro, then age 10, and Alaska, then age 9, were neglected, and requesting temporary custody. The complaint alleged lack of supervision resulting in excessive truancies and delinquencies for the children, the home environment was filthy and unhealthy, and that the parents had failed to comply with a case plan already in effect with DHS.
On May 12, 1999, the parties admitted to the neglect charges and stipulated and agreed that it was in the best interests of the three younger children to be placed in the temporary custody of DHS. The parties also stipulated that no orders were necessary for the oldest child, Esiquiel, Jr., as he was at that time in the custody of the Department of Youth Services.[1]
On May 17, 1999, a case plan was established and approved by the court. The plan called for the appellants to attend parenting classes, to acquire and maintain employment, and to find adequate and suitable housing for themselves and the children. Additionally, the case plan required the mother, Marsha Parker, to seek treatment for her alcohol and drug problems. The objectives of the case plan were mainly geared toward the mother, as the father, Esiquiel Ramirez, Sr., from the beginning refused to work with DHS.
A semi-annual review was conducted on September 8, 1999 with DHS and Appellant Parker. At that time DHS stressed to her that there had been no compliance with the plan and warned her of the ramifications of continued non-compliance, i.e. that DHS would seek permanent custody.
On February 5, 2000, DHS filed a motion for permanent custody of the three younger children. A full hearing was held in this matter on May 9-11, 2000. The record of the proceedings revealed the following facts. DHS has been involved with this family since 1987. All five of the children were removed from the home for six months in 1993 and then returned under the protective supervision of DHS. This protective supervision continued until April of 1995. Two of the boys, Esiquiel, Jr. and Justino were removed from the home in September of 1997 by the Juvenile Court due to their many delinquencies. All of the children were removed for the final time in March of 1999 and have been in foster care since that time.
As it pertains to Appellant Parker, the testimony adduced at the hearing revealed that she has done very little to change her circumstances and comply with the case plan since the children's removal. Of the utmost concern of DHS was the condition of the home the children were living in. There was voluminous testimony concerning the filthy condition of the home. It appeared that there were animal feces strewn throughout the house, as well as dirty dishes, food and trash. One witness described the oldest daughter's room as a 10 x 10 litter box. A series of pictures were introduced into evidence to show the deplorable conditions in which the children were living. Appellant Parker was evicted from these premises and now resides at her boyfriend's house.
The case plan called for Appellant Parker to seek alcohol treatment. The record reveals that she did in fact begin treatment at Five County Drug and Alcohol, but that her last visit with that agency was on February 11, 1998. She did re-engage in treatment after the motion for permanent custody was filed and just two weeks prior to the permanent custody hearing.
Appellant Parker was also to seek job training and employment. The record reveals that despite extraordinary efforts made by DHS' Job Assistance Program, there was no follow through or cooperation made by Appellant Parker and she was removed from the program for non-compliance. The record reveals that Appellant Parker did seek employment through a temporary agency in April of 1999. Through that agency, Parker was given approximately five assignments, none of which lasted more than a month. She was terminated from one because she couldn't perform the job fast enough, three because her attendance became a problem, and one because she tested positive for marijuana. Due to this positive drug test, the employment agency terminated its arrangement with the appellant.
The case plan allowed for one visit per week between the children and Appellant Parker. The record reveals that from the time the children were removed from the home, March 17, 1999, until May 20, 1999, she made no attempt to visit the children. She began visiting with the children sporadically through the summer months and then again made no attempts to see the children from January 2000 through April 2000.
As it pertains to the father, Appellant Ramirez, Sr., the record reveals that he at no time had day-to-day contact with the children. He had consistently and continually refused to work with DHS and up until the final hearing never expressed a desire or willingness to provide a home and care for his children. Records from the Defiance County Child Support Agency reveal that Appellant Ramirez was in arrears approximately $11,000. During the time the children were in temporary custody, he was also entitled to visit with them weekly. Of a possible fifty-one visits, the appellant made only seven of them and from November 1999 until March 2000, he did not see the children at all.
At the final hearing, Appellant Ramirez indicated a desire to have custody of two of the children, Justino and Alejandro. He was not interested in care for Alaska, as the child is mentally retarded and "is a burden." He testified that the home he was currently living in was not suitable for children and, if he were granted custody, the boys would live with his mother. He also indicated that he worked second shift (3:00 PM to 11:00 PM) and that he would only be able to see them in the mornings before they went to school. He felt that the boys were at an age where they were very independent and did not require a lot of supervision. Appellant Ramirez's mother testified that while she was willing to help her son with the children, she had no desire to have custody of them herself.
The evidence further revealed that the children were flourishing in the foster home. The boys' principal testified that prior to their removal from the parents, Justino and Alejandro were excessively absent from school and were often tardy. The boys were also sent to school dirty and were virtually failing every subject. In contrast, since their removal, they have each only missed one-half day and received nothing below a C on their grade cards.
Alaska is both physically and mentally retarded and therefore attends a different school than the other boys. The administrator from Alaska's school testified that prior to his removal in March, he had missed seventy-two days in that school year. From March until the end on the school year, he missed only one day. Alaska's teacher testified that since the removal from his home, he has made great strides. He had learned to use utensils, drink from a straw, was walking better and was learning to communicate his needs. She also noticed that Alaska has seemed more interested, alert, rested and that he is always smiling, something she rarely saw before.
At the conclusion of the hearing, the trial court took the matter under advisement. On June 15, 2000, the court issued Findings of Fact and Conclusions of Law and granted DHS's motion for permanent custody. It is from this judgment that the appellants now appeal, asserting three assignments of error.
Before addressing the appellants' assignments of error, it is necessary to set forth the standards to be used in this matter. A trial court conducting a hearing on a motion for permanent custody must follow the guidelines set forth in R.C. 2151.414. Pursuant to R.C. 2151.414(B), the court may grant such a motion if two determinations are made. The court must determine by clear and convincing evidence, after a child has been found by the court to be neglected, dependent, or abused, that it is in the best interest of the child to grant the movant permanent custody "and that any of the following apply:
 (a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of his parents within a reasonable time or should not be placed with his parents;
 (b) The child is abandoned and the parents cannot be located;
 (c) The child is orphaned and there are no relatives of the child who are able to take permanent custody;
 (d) The child has been in the temporary custody of one or more public children services agencies or private placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.
R.C. 2151.414(B)(a) through (d).
R.C. 2151.414(D) sets forth the factors that a court must consider in order to determine whether granting permanent custody to a public agency would be in the best interest of the child. This statute states in relevant part:
 (D) In determining the best interest of the child at a hearing [on the issue of permanent custody] * * * the court shall consider all relevant factors, including, but not limited to, the following:
 (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 (3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public services agencies or private placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 8, 1999;
 (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 (5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and the child.
 The factors set forth in R.C. 2151.414(E)(7) to (11) include whether the parents have been convicted of or pleaded guilty to various criminal offenses; whether medical treatment or food has been withheld from the child; whether the parents have placed the child at a substantial risk of harm due to alcohol or drug abuse; and whether the parent has rejected treatment for an alcohol or drug problem. In the Matter of Weatherholt (Feb. 4, 2000), Seneca App. Nos. 13-99-31 and 13-99-32, unreported.
A reviewing court may not reverse a trial court's judgment based on the weight of the evidence presented, since the judge, when acting as the trier of facts, is in the best position to weigh the evidence and evaluate the testimony. In re Brown (1994), 98 Ohio App.3d 337, 342. Pursuant to R.C. 2151.414, a permanent custody determination must be supported by clear and convincing evidence. Id., see e.g., In re Davis
(June 3, 1994), Defiance App. Nos. 4-93-25 through 4-93-27, unreported;In the Matter of Haywood (May 9, 2000), Allen App. Nos. 1-99-93 through 1-99-95, unreported. Clear and convincing evidence is more than a mere preponderance of the evidence. Rather, a petitioner must prove each of its allegations, clearly and convincingly, producing "in the mind of the trier of facts a firm belief of conviction as to the facts sought to be established." In re Adoption of Holcomb (1985), 18 Ohio St.3d 361, 368, quoting Cross v. Ledford (1954), 161 Ohio St. 469.
In the interest of clarity and brevity, the appellants' assignments of error will be addressed out of numerical order.
 Assignment of Error No. 2 The trial court erred in granting appellee's motion for permanent custody and abused its discretion in that the procedures of Ohio Revised Code Section 2151.414 were not followed.
 In their second assignment of error, the appellants contend that the trial court did not consider the appropriate factors in determining what was in the best interest of the children. As stated above, R.C. 2151.414(D) sets forth a non-inclusive list of factors a court must consider in determining the best interest of the children.
The record clearly reveals that the trial court did in fact consider the factors delineated in R.C. 2151.414(D). Specifically, the court found that there was a consistent lack of supervision of the children by both parents and virtually no involvement by Appellant Ramirez. R.C.2151.414(D)(1). The appellants failed to receive treatment for their alcohol problems. While the appellants deny such problems, a review of their criminal and traffic records reveal that both of the appellants have committed numerous alcohol related offenses. R.C. 2151.414(D)(5); R.C. 2151.414(E)(9). Additionally, the children had been in the custody of DHS for over fourteen months at the time of the final hearing and the appellants had done virtually nothing to remedy the conditions that led to the children's removal. R.C. 2151.414(D)(3).
Furthermore, the court heard several witnesses testify that the children have thrived since their removal. Their principal and teachers testified that the children no longer have a truancy problem and their grades have improved greatly since they have been in the custody of DHS. The children's foster mother stated that they were very happy living with her and her husband and had expressed a desire to stay with them permanently. The guardian ad litem also submitted a report recommending that permanent custody be given the DHS. The guardian ad litem's report indicated that when asked, Justino and Alejandro indicated that it was their desire to remain with the Mack's, their foster family, as "it was a better family and they got better care."[2] R.C. 2151.414(D)(2).
The record clearly reveals that the trial court considered the factors listed in R.C. 2151.414(D) in determining the best interests of the children. Accordingly, the appellants' second assignment of error is unfounded and is overruled.
 Assignment of Error No. 3 The trial court committed reversible error by failing to enter a finding that the children could not be placed with either of the parents within a reasonable time or should not be placed with relatives of the parents as required by Revised Code Section 2152.414(E).
 In their third assignment of error, the appellants contend that the trial court erred because the judgment entry does not specify that the court found that the children cannot be placed with either of their parents within a reasonable time or should not be placed with their parents. This Court recently addressed this very issue In the Matter of Wesley Kelley (August 15, 2000), Marion App. No. 9-2000-23, unreported. In that case, we held that while the court did not specifically state that the child cannot be placed with either parents within a reasonable period of time or should not be placed with the parents, it was clear from the court's detailed judgment entry that that was the court's findings. We find the judgment entry issued in this case to be equally clear and sufficient.
The judgment entry issued by the trial court specifically states that the court found that there was clear and convincing evidence that "these parents are not capable of raising these children in any reasonable manner, and permanent custody of these children should be granted to the Department of Human Services." The court cites to various factors under R.C. 2151.414(E) to support this contention. Specifically, the court found that Appellant Parker had fallen squarely under the requirements of R.C. 2151.414(E)(1) and (2) by failing repeatedly to even minimally change the conditions of the residence, her lack of supervision of the children, or her personal commitment to alcohol, which resulted in their placement outside the home. The court also found that Appellant Ramirez had "violated R.C. 2151.414(E)(2) and (4) by failing to demonstrate any commitment to these children. He has regularly failed to support them, to communicate with them, or to take any other action showing willingness to improve their lot, probably also because of his chronic dependency on alcohol."
The detailed judgment entry clearly supports the court's decision that it would be in the best interest of the children for permanent custody to be granted to DHS. A thorough review of the record and the findings and conclusions of the trial court clearly reveals that the court considered all relevant statutory factors in rendering its judgment. The express purpose of a R.C. 2151.414 hearing is to determine whether a child can or should be placed with either of his parents within a reasonable time after consideration of specific statutory factors. In the Matter ofHart (March 9, 1993), Marion App. No. 9-92-47, unreported. The court's explicit findings under R.C. 2151.414(E) are an implicit conclusion by the court that one of the situations under R.C. 2151.414(B) was applicable. Therefore, the court's failure to reproduce the exact statutory language cannot be considered prejudicial to the appellant.Id.
Accordingly, the appellants' third assignment of error is overruled.
 Assignment of Error No. 1 The judgment of the trial court in granting permanent custody was against the manifest weight of the evidence and contrary to law.
 The appellants contend that the decision of the trial court was against the manifest weight of the evidence and contrary to law. As previously stated, the trial court considered all the relevant factors and the record clearly supports the judgments reached by the court. Accordingly, the appellants' first assignment of error is overruled.
Having found no error prejudicial to the appellants herein, in the particulars assigned and argued, we affirm the judgments of the trial court.
Judgments affirmed.
WALTERS and SHAW, J.J., concur.
[1] The record also reveals that there is also an older child, Jessica Parker, age 17. Jessica is not a party to these proceedings.
[2] The guardian ad litem was not able to ascertain the desires of Alaska due to his physical and mental condition.